Good morning, Your Honors. Krista Hart on behalf of Sidney Greene representing the appellant. My goal is to reserve three minutes for rebuttal. In this case, in any criminal case, a defendant has very few decisions that are solely within his purview. Two of them are whether to plead An attorney's duty is to ensure that the defendant's decision is well-informed by providing them with the relevant legal analysis as it applies to the facts in that case. Counsel is not required to ensure that her client makes the best or even a good decision, just that it's a well-informed decision with all of the facts before him. Here, Mr. Greene pleaded guilty to two counts pursuant to a plea agreement. Counsel did not effectively ensure that the plea itself and the waiver of the appeal rights and the collateral attack rights were knowing, intelligent, and voluntary. And this stemmed from the moment that the district court called counsel into chambers to discuss with counsel a modification to the 11c1c plea agreement that the court wanted to make. But counsel, at that point, if I recall the record correctly, the plea agreement had already been signed. That's correct. Okay, so the district court, just like at the sidebar, wanted to let people know and let the counsel know what he had in mind. But it was within the confines of a signed plea agreement. Correct. What's the matter with that? What's the matter with that is, first of all, this was an unreported conversation between the court and counsel. So what we have is the defense counsel's best recollection of what occurred, which is improper in and of itself. And second, what the court said is, I will accept this a plea agreement if it includes 700 hours of community service. The plea agreement contemplated that there would be conditions without specifying what they were, right? In an ambiguous way it did. It spoke of the sentence of between 120 and 144 months as being the range permissible under the 11c1c agreement. The problem is that the word sentence has various meanings within the context of plea agreements and sentencing law within the federal system. The case of Joyce, which discusses that, there's the sentence which colloquially people refer to as the time spent in prison, the term of imprisonment. It specified in at least two places, I was looking to see if there were more, that regardless of the prison time, there would be seven years of supervised release. So it if you're going to use the word sentence to encompass all of the supervised release, the conditions, either mandatory, special, or the optional, fines, penalties, etc., then when Mr. Green signed that plea agreement and waived his right, then technically according to the plea agreement, you couldn't impose any conditions of supervised release. You could not, you say? I think a very strict reading of that, if you read Joyce, Joyce argues... You really think that that very strict reading would be the one adopted? Well, but that's the problem here. Let's look at what happened here. There was a plea agreement already entered into which the district court rejected. Correct. There's another plea agreement entered into which doesn't specify, it makes reference to condition, it makes reference to the supervised release, and their conditions to supervised release, without saying anything about number of hours of community service. And the 700 hours was unusually large. There was no modified plea agreement. The district court tells the parties, I'm not going to accept this one either, unless you know that this is what I have in mind. I'm having trouble understanding how that's worse than the alternative of the district court simply exercising authority to impose conditions of supervised release. Because the district court conditioned acceptance on this and relayed that to counsel for counsel... And gave your client a chance to say, well, that's not the deal I made, in the same way that he's better off knowing than not knowing and being blindsided, I think. Because that way he had the opportunity to say, well, that's not my deal, I'm pulling back. And he could have pulled back. And he didn't. He informed his attorneys that that was not part of the deal. But he didn't inform his attorney to withdraw his guilty plea. Here's the problem. Did he? But it's counsel's obligation to protect her client's rights. That's not answering my question. He did not say, counsel, please withdraw my guilty plea. Are you saying he didn't know he had that option? Yes. I'm saying it's counsel's obligation. I was not told that. And it's counsel's obligation to inform her client about what his rights and what his options are. Counsel concedes, they say, we didn't think we had a choice. Because they came from the court. So once they went into chambers with the judge and the judge said, here's this, I'll accept this plea agreement, but only on the condition that it includes 700 hours of community service. Counsel said, we didn't have a choice. They didn't go to their... According to your client's, your brief, the attorney said, this is our best shot to get the court to accept the plea agreement. Correct. Your, your client was being persuaded by his attorney. That doesn't tell me your client didn't have the option of pulling back and saying, that's not the deal I made. That's not the deal I'm willing to make. Counsel also said they didn't think they had the, the legal ability to object, the legal ability to move to withdraw. So if they don't think that they have the legal ability to move to withdraw the guilty plea, I'm not sure how Mr. Green is supposed to, on his own, ignore the advice of two defense counsel that are sitting there with him. And he is supposed to assert a right he's not even entirely sure he has. And I'm not sure that we should impute on defendants' knowledge of the law and knowledge of what their rights are in this type of situation. I thought that what happened was that defense counsel informed your client, he didn't believe that the court was going to accept the plea agreement unless the 700-hour community service was accepted. Yes. Okay. So again, it gets back to what my colleague just pointed out. When he was presented with that, if your client said, you know, I, no way I want to do that. I'm withdrawing my guilty plea. But he said, he told his attorneys, that's not part of the plea agreement. And then that's when the attorney has the obligation to say, then let's move to withdraw your plea. The attorney said, I don't think I can get the judge to accept the plea agreement unless we do this. So all he has to say is, hey, let's not accept it then. Let's go to trial. Well, he did tell his attorneys that's not part of the agreement. Where in the record is there any statement by him that he would have said no and gone to trial? Well, he has an equivocal statement in paragraph five of his declaration. Equivocal in this way, they said, this is our best shot to get the court to accept the plea agreement. Neither of my attorneys discussed any options for me in relation to the 700 hours of community service. They did not discuss whether I could withdraw from the plea agreement. So he never actually goes so far as to say he wanted to. Does he ever say anything in the record that says, if I could go back in time, I'd rather go to trial? No, he doesn't say that. Then what's the problem? Where's the prejudice? The prejudice here is that his attorneys had an obligation to advise him that this is a- Fine, but he now knows and he's doing his declaration. He knows, but he doesn't say, if I had to do it all over again, I'd withdraw my plea and go to trial. He never says that. Your Honor, the fact that he's filing a 2255 motion saying he wants to set aside his plea agreement because of this error, I think is evidence of that. And again, I guess, you know, I'm troubled by the idea that we have a defendant who's sitting there in the courtroom represented by two attorneys telling him what the law is. We don't have any choice to do this. The attorney said, we don't have, we didn't think there was anything we could do about this. And then he is supposed to somehow know that he should ignore that and say to the court, I object, I want to withdraw my plea. And I'm down to 19 seconds, so. We'll give you a minute for about, we've asked a lot of questions. Okay, thank you. Good morning. May it please the court, Brian Wilson on behalf of the government. I think y'all have identified the issue here. I also want to step back and look at one big picture item. Think about what would have happened if counsel had come out and said to Mr. Green, hey, there's 700 hours. I think we ought to go to trial. I think. Well, that isn't, the fundamental problem is that according to his declaration, they didn't tell him anything about it. That it wasn't, they didn't tell him it was a possibility. They didn't give him, you know, the required information to discuss. And that's disturbing. Um, that doesn't mean that there's prejudice. That doesn't mean he would have gone to trial, but that's not their only option is to say, let's go to trial. Their obligation was to say, this is a possibility and the judge wants to do this. Let's talk. It's still your best option, but if you don't like it and so on and so forth. And I think that the counsel's affidavit did tell him this is our best option to get this plea done. And this is a great deal. I mean, he's avoiding 15-year mandatory minimums, life sentences, all in exchange for what amounts to, remember, two hours per week of community service when he gets off on, gets on to supervisory lease. That's what this is. 700 hours sounds a lot, but it's two hours a week. It's two hours a week for a long, long time. It is two hours a week for a long, long time, but life in the big house is a long, long time too. And that's really... It wasn't like he was getting it. I mean, he had previously entered into an agreement for, what was it, 10 years? And now he's got an extra two years in that big house. That's right. And then he's being told, oh, by the way, you got 700 extra hours. That's a lot. It's a lot. It is a lot, Your Honor, but I contend it's still a good deal and they still would have taken it. I don't think he can show prejudice here. Well, he's here now. I mean, suppose he's successful on this petition, what happens? Well, we go back and he gets the choice of withdrawing that plea and seeing if they can renegotiate another plea deal that the court will accept. Well, so in fact, he's now, by this petition, saying what he might not have said very explicitly before, but seems to be indicating now he's prepared to take his chances. And the passage of time, I've now forgotten how long ago it's been since all of this took place. A few years ago, I guess. Maybe the government should say, nuts to this. We'll try you and send you up the big house for a long, long time. Long time. That's correct. It could. They certainly could do that. But our position is that, you know, in order to be successful on 2255, they've got to show both deficient performance and prejudice. And here that the counsels, we don't contend, we contend the counsel's performance was not deficient for the counsel to say, look, this is our best shot to take this two hours per week. It's, that's what you're paying the counsel to do is to say what, you know, stay with it. Well, we have to do this to get the deal. Right. Should they also have said to him, but you can always walk away from the deal. I think he knew that your honor. Well, granted. And that's the conundrum we're facing. I mean, yeah, I understand the inference. He probably knew that the way it's phrased and so forth suggests there is an alternative. But what if he didn't? What if he thought this is, gee, I'm now stuck. I can't do anything about it. And by this petition is suggesting if I could have done something about it, I would have. But he doesn't say that. I know the petition suggests that, but he had a chance to say in his affidavit that knowing what I know, I would have walked away if they had told me I could have. And he didn't say that. And I contend what he's trying to really do here is just take the benefits of this very good plea agreement and just cherry pick off the 700 hours that he doesn't like. And I don't think he can do that in this proceeding. I think he's either waived his right to either collaterally attack or repeal. And he's trying to use this 2255 as a way to just cherry pick off. Let me go to that latter point. We, of course, are dealing here with four claims. One in three get to the substance. Is it the government's position that we shouldn't even be talking about one in three? I contend that, Your Honor. I contend that either it's either not these issues are not covered by the Certificate of Appeal Ability or they've been waived, one or the other. Well, we can expand the Certificate of Appeal Ability, and it has been briefed. And it seems to me that it's all bound up as a package. It's very difficult to without talking about the substance of what it was about. And I agree with that. And it is difficult. And it was difficult for me even briefing the thing because it is just one big package. But I do think that one thing that occurred here is all of this occurred right in front of the defendant. This is not a what I would call more a typical ineffective assistance where it was something that the defendant didn't even realize was going on until after he's already received a sentence and learns new facts or something like that. I mean, all of this happened right in front of the defendant's nose. And I contend he knew he could have withdrawn the plea. He didn't have to withdraw the plea. Remember, he had not pled guilty before. So all he had to do is when the judge said, how do you plead? He could have said not guilty. Let's assume for a moment that we're going through and we're considering the IAC claim. Under Strickland, of course, there are two prongs. The first one you have to show the performance of counsel was below the standard of the community. What's the government's position on whether his counsel in this case failed to meet the community standard? We contend he did not fail to meet the community standard because I think any reasonable counsel would have told him, look, you may not like this, but this is still a good deal. And I would suggest you take it. I just don't. I think, like I said, the converse, if we were here with the attorney saying don't take it and now Mr. Well, the issue is there's that, as I understand it, is that the lawyer didn't explain that that was an option. Even that may be seem overly technical, but it seems to me it's one thing to say this is a terrific deal and another to say, well, even so, if you disagree with that, you know, and I strongly advise you to take the deal, nonetheless, you could back out if you wanted to. And he's at least alleging that that was not discussed with him. And I understand y'all's concern, but I don't think the case law requires the attorney to go that far. I don't believe that. And even if it did, you still have to show prejudice. And the prejudice here is you would have had to have been discussed or they wouldn't have signed the plea agreement in the first place, right? Are we as a court of appeal entitled to infer or must we rely exclusively on the record for this? Is it counsel, the defense counsel's burden to show that this is what was said, that what was inferred? Whose burden is this anyway? Well, I think it's the, you know, burden, he's the one brought the 2255, so he's got the burden to show what the facts were. And I think you can take any reasonable inferences from the record in this case. I think another thing, too, to step back is that this is, like I've said, the 700 hours sounds like a lot, but you look, I believe it's page 19 of our brief, you know, there are a lot of conditions of supervised release that got appealed saying, hey, we didn't agree to this. And this court has said, you know, restrictions on coming back to San Francisco, I believe is one of the cases, things like that, pretty big conditions. And this is a fairly mild condition of supervised release we're talking about here. And I just don't think it's such a mild condition. I don't think the defendant could ever show prejudice here. I think any defendant is going to take this deal even if they're... In order to show prejudice, doesn't he have to show that he would have rejected it and tried to negotiate something else? No guarantee. Unless there are any other questions. I don't believe so. Thank you. I appreciate your time. Ms. Hart, you have one minute. I started my opening statement about how an attorney's job is not to make sure that her client makes the best or even a good decision, but that it's a well-informed decision. So the he didn't know that he could withdraw his plea. Do you have any case that's on all fours with this situation? There is no case that's on all fours of this situation. And then as far as the court interjecting themselves into the negotiations, this is comparable to the Gonzalez-Melcore case, which that occurred at sentencing. And yes, the defendant was standing right there. Counsel was standing right there. The judge said, if you agree to waive appeal, I will give you a lower sentence. They conferred. The defendant agreed to waive appeal, got a lower sentence. This court set that aside because that was improper injection into the plea negotiations. Because there's no signed plea agreement in that case. In this case, you've got a signed plea agreement. But in this case, then, and to distinguish it from the cases that counsel is talking about, this is an 11C1C agreement. The other case is that the government cites a majority of the cases, aside from there's Rudd. But all of the other cases that the government cites in their brief are not 11C1C agreements. This one is. And this one says specifically, the sentence will be between 120 and 144 months. I think we understand your position and your time has expired. Thank you. Thank you, counsel. The case just argued is submitted and we appreciate helpful arguments from both of you.
judges: Graber, Clifton, M. Smith